Call the case of Tower Automotive v. Inductor Commission 509-0266 Counsel, please. Good morning, Your Honors. May I please support opposing counsel. My name is Russ Hayes and I'm here on behalf of the appellant, Tower Automotive. Tower Automotive has appealed the circuit court order which affirms the Illinois Workers' Compensation Commission decision which found that Mr. House would require permanent restrictions and was entitled to vocational rehabilitation benefits as well as maintenance benefits. Prior to the decision of the Illinois Workers' Compensation Commission, the arbitrator in this matter determined that the opinions of the Section 12 physician, Dr. Sudikum, were more persuasive than those opinions of the treating physician, Dr. Brown, and that Mr. House was at maximum medical improvement and would not require any work restrictions and was not entitled to any further benefits, whether that be maintenance or vocational rehabilitation training. With regard to this appeal, there are two main issues that I'd like to discuss. The first issue is that the Illinois Workers' Compensation Commission's decision to award Mr. House additional benefits based on the opinion of Dr. Brown and prior work injuries which have previously been settled would allow Mr. House to recover twice for injuries that have already been paid and contrary to the applicable law of this case, it should be reviewed de novo. The second main issue in this case is the fact that the Illinois Workers' Compensation Commission's decision that Mr. House would require permanent restrictions and is entitled to additional vocational training and maintenance benefits is against the manifest way of the evidence. Now what issues again are you saying should be reviewed de novo? The issue with regard to the employee's recovery for additional benefits based on Dr. Brown's opinion that the employee would need permanent restrictions from all his previous injuries that occurred at Tower Automotive. Would that be reviewed de novo? Yes. Why? Because it's a question of law based on the fact that if under Section 19H of the Illinois Workers' Compensation Act it provides that any disability of the employee has subsequently recurred or increased which is on the opinions of Dr. Brown he said his opinions were based on the totality of injuries suffered by this employee with him indicating he can't look at the specific left elbow injury for this specific case as an isolated event he would place permanent restrictions. So in turn Dr. Brown's opinion is that there's been an increase of these prior injuries to require permanent restrictions. However, these prior injuries were previously settled under workers' compensation. Didn't Dr. Brown testify that the current injury contributed in part to the condition of the claimant? He did testify to that. So then under CISPRO the game is over. You took him the way you found him. You may have paid for prior injuries but as long as this current injury contributed in part to his condition under CISPRO he's entitled to recover. So where's the issue of law? The issue of law is that he waived his right to any additional benefits for these prior injuries. He didn't get additional benefits for these things. He got recovery because this injury contributed in part to his condition. That's what Brown said. And I understand that but his application for adjustment claim was only to the left elbow. However, Dr. Brown's opinion is he took the employee at totality of prior injuries not just his left elbow. He took the totality of his condition part of which was caused by this injury. I never understood the argument. Brown's testimony was pretty clear that his restrictions were related in part to the condition for which he treated the claimant which was the left elbow. But he also said that the permanent restrictions that he placed were based on all these prior injuries as well. He didn't provide an opinion just based on the left elbow which is the only injury that the employee applied for or asked benefits for. You seem to think that the recovery has to be based in total upon the current condition and that's not the law. It need only be a causative factor, one of them. It doesn't have to be the whole thing. And your complaint is because the other portion of it were settled workers' compensation cases that somehow he has no right to recover. What's your best case that stands for that proposition? My best case, I feel this is a case of first impression where an opinion from a treating physician who says, I can't look at this one injury. I have to take all the injuries that this guy has previously suffered and previously settled workers' compensation claims for and previously been awarded benefits to provide this opinion. And to do that would be providing this employee double recovery. He would be receiving maintenance benefits as well as vocational benefits for prior claims that he had already previously settled. He'd already previously received almost a quarter of a million dollars in previous settlements for claims to the bilateral upper extremities. Dr. Brown's opinion was he needs permanent restrictions to the bilateral upper extremities for all his previous surgeries. And the only injury we have here is to the left elbow. And he couldn't provide an opinion, a specific opinion with regard to permanent restrictions just based on this injury alone to the left elbow. Are you familiar with the CISPRO case? I am, Your Honor. And what is your reading of the CISPRO case and how do you distinguish it from this case? And I understand that this, because this is, this more deals with the terms of the settlement that he expressly waived his rights under 19-H. Which I'm, I allowed under 19-H you can get additional benefits for those injuries. And this case is distinguishable because the opinion of Dr. Brown is not, he didn't base it just on this injury. He didn't base it on the left elbow. He based it on the totality. He couldn't just look at this one left elbow. If it aggravates, if it is a causative factor, it doesn't have to be the sole factor or even the principal factor under CISPRO. If it is a causative factor, then recovery is appropriate. Yes, Your Honor. So how do you get around that argument? We still feel that he waived his rights to any additional benefits. Well, wait a minute. If your argument were correct, no employee could recover for aggravation of a pre-existing condition if the pre-existing condition had been settled in a prior worker's compensation action. That's not the law. There has been. I understand that, Your Honor. But there's also, that's why 19-H is available to these employees. Well, 19-H is available if there is no subsequent injury and the condition increases or the condition becomes worse. That's what 19-H is for. No one has ever said that 19-H would, if you settle a worker's compensation action and there's a subsequent event that aggravates that pre-existing injury, that you have to rely on 19-H and you don't have a right to a new claim. There's no case that says that. It's correct. It says exactly the opposite. That's correct. OK. Go ahead. With regard to the second issue, whether or not the commission's decision that Mr. House would require permanent work restrictions and is entitled to additional vocational rehabilitation or maintenance benefits is against the manifest way of the evidence, if you review the record, this is due in large part because in this case, an opposite conclusion is clearly apparent and that the opinion of Dr. Sutticum is clear and concise and based on an objective test, i.e., the FCE, whereas Dr. Brown's opinions are littered with ambiguity and indecisiveness and there's no definitive term or permanent restriction term that he placed on this employee. Dr. Brown examined the employee in October of 2006, whereas Dr. Sutticum had the benefit of examining this Mr. House almost six or five months after Dr. Brown examined him. On the last medical note from October 31st, Dr. Brown placed ambiguous restrictions of no strenuous or repetitive work. He admitted that he could not – well, Dr. Brown admitted that FCEs are useful guidelines and that he had used FCEs in the past as an objective test in determining whether a person should be placed with permanent restrictions. However, in this case, Dr. Brown decided to ignore the FCE results and disregard this objective guide that showed Mr. House could, in fact, work at the heavy work demand level with no restrictions. Dr. Brown only instructed Mr. House to avoid repetitive activity without actually defining those terms. However, the opinion of Dr. Sutticum, which the arbitrator found was more persuasive, was previously involved in this case in June of 2006 at the request of Tower to provide a causation opinion. And Dr. Sutticum agreed that the work duties performed at Tower Automotive contributed or were a cause to the employee's left elbow condition. He also recommended surgery at that time. However, he did – he was requested to examine the employee on a – for a second occasion to address the issue of permanent restrictions. Dr. Sutticum noted that during physical examination of the employee in March of 2007 that Mr. House had a full, normal range of motion of the bilateral elbows, forearms, wrists, thumbs, fingers, and normal sensation of both the hands. And that the only limitation that Mr. House suffered from at that time was the subjective symptoms. There was no objective deficiencies in terms of his functional measures, which are strength, his range of motion, or sensation at all. However, before Dr. Sutticum would provide a definitive opinion of whether or not Mr. House would need permanent restrictions, he scheduled Mr. House for a functional capacity evaluation. Mr. House performed this functional capacity evaluation on March 6, 2007, which showed that he was capable of performing work at the heavy work demand level and could return to the prior position that he was working in prior to his alleged injury from November of 2005. The results were reviewed by Dr. Sutticum. He again examined the employee the day after the FCE. The examination, again, was unremarkable. There was no objective abnormalities with regard to the bilateral extremities of the employee. And Dr. Sutticum felt that Mr. House would not require any permanent work restrictions and that he could return or could pursue any employment that he would like. What about the opinion of Slacey, the individual named Slacey? What's your opinion on how that bears on that issue? Ms. Solis, with regard to the vote, read that. Her opinion with regard to the injury or whether or not he's capable of returning to work? He's capable of returning to his job. Well, Ms. Slacey was asked to provide an opinion based on the opinion that he would need these permanent restrictions placed by Dr. Brown. Her opinion was provided before Dr. Sutticum indicated that he wouldn't need these permanent restrictions. So does she support Brown or contradict Brown? She does support Brown that he would need, that he would require assistance in vocational training. So if the Commission believes Brown and Slacey, do we relay the evidence? What do we do? If the Commission believes Ms. Brown, or Dr. Brown and Ms. Solis, then you would, if you believe them, then you would affirm the decision of the Circuit Court and the Illinois Workers' Compensation Commission. However, the opinions of Dr. Sutticum are more persuasive, as noted by the arbitrator, that he would not require permanent restrictions. How do we determine, we don't relay the evidence, the Commission determined that Brown and Slacey are more credible. So we then do an independent assessment then of their credentials and their credibility versus Sutticum? Well, you look at the, I mean, you would take the opinion, and if the opinions of Dr. Sutticum show a clear, concise, opposite conclusion than what Dr. Brown and Ms. Solis believe, then you would reinstate the decision of the arbitrator. Solis, he was referred to Solis by you. That's correct. And then Solis issues this report that says that he needs vocational rehabilitation. That's back in February of 2007. Sutticum, who was your doctor, issues his report saying that there's nothing wrong with him, and then Solis changes her mind. She issues a supplemental report. In May of 2007, after Sutticum comes out with his report and says now he can do his prior job at TOP, isn't that kind of what went on? Yes, sir, that is what went on. She was provided the updated opinion from Dr. Sutticum. We provide her with all the relevant medical records. You didn't provide her with all the relevant medical records before she issued the report in February? No, she had the medical records. She didn't have Dr. Sutticum's. So it was Sutticum's opinion that he could work. Correct, your honor. Powell Automotive asks that you just reinstate the decision of the arbitrator and determine that the employee is at maximum medical improvement and would not require any further work restrictions. Thank you. Counsel, please. May it please the court? My name is Mike Corwin. I'm here on behalf of Morgan's House. First, I'd be happy to entertain any questions you may have. Is this case covered by SISBRO or not? It is. Why? It is because the law has always been that you can have an aggravation of a pre-existing condition. You can aggravate a prior settled condition. There's never been a question of that. The law in the state of Illinois is also very clear that you take your petitioner as you find them. I suppose the most pertinent fact is that this gentleman really did have a substantial change in his ability to perform his job. He had gone through a number of prior injuries performing the same or similar type of work. He had been released and returned to full duty after each injury. He was capable of performing that until another structure further broke down. And in this case, it was the medial aspect of his left elbow. And please bear in mind that this gentleman's left hand. So for most of us, the right-handed, that's equally as significant. I frankly have not found any case that would distinguish the facts before this court to SISBRO. And I suppose there's an argument that's being made that then you would have to apply a credit against potentially a wage differential down the road. Because you can't have a wage differential without a permanent restriction that cannot be accommodated. And the Illinois Supreme Court back in 1982 specifically noted that statutory loss for body part is a non-creditable issue against an 8D1 wage differential. We're not there yet, but we are on that road. That case is General Electric v. Industrial Commission, 89 Illinois 2nd, 432. It's also 433 Northeast 2nd, 671. The Council for Tower Automotive went to great lengths to identify what the findings of the arbitrator were. But this court has noted that the commission, not the arbitrator, is the finder of fact. Additionally, in its brief, Tower Automotive pointed out how credible Dr. Sutekin's opinions were. And in fact, the commission found that they were not correct. So the question is, is an opposite conclusion clearly a fact? And in that regard, the commission noted that the failure to rely on the 2007 FCE was reasonable, given the fact that this gentleman had a repeated history of repetitive injuries. That if you were to even look at the 2004 FCE that was submitted by Tower Automotive in this case, the 2004 FCE said that he was capable of a full duty. Well, if that was the case, then we wouldn't be here today, because there would be no injury in 2007. If that was such a reliable measure, objectively, for determining whether one will or will not be able to sustain repetitive work, then there's no case. All right, so you are, without belaboring it, you're arguing this is a very simple case? Yes. Is this by all controls? Because the work of their accident, from which the claimant seeks to recover, need only be, A, cause it to factor in the resulting condition, and B, it's not up to us to re-weigh the credibility of the witnesses in the weight to be given to the testimony. Is that your argument? That is, Your Honor. Thank you. All right. Unless anyone else has any questions. Thank you. Thank you, Counsel Rebello. Are there any questions? No. Thank you, Counsel. Clerk will take the matter under advisory for disposition. We'll stay on recess for a short period.